United States District Court
Northern District of California

UNITED STATES OF AMERICA,

   Plaintiff,

  v.

ALFREDO LIMON LOPEZ,

   Defendant.

Case No.: CR 12-71140 MAG

**RELEASE ORDER**

## I. INTRODUCTION

Defendant Alfredo Limon Lopez was charged in a criminal complaint with a violation of 18 U.S.C. §841(a)(1) (possession with intent to distribute methamphetamine). On October 11, 2012, the government moved for Defendant's detention pursuant to the Bail Reform Act and asked for a hearing pursuant to 18 U.S.C. § 3142(f).

Pretrial Services prepared a full bail study and recommended that Defendant be released on a $250,000 bond, secured by $150,000 cash and/or property and co-signed by his wife, sister, and brother, and subject to a set of release conditions. The court conducted a bail hearing on October 16, 2012. Defendant was present and was represented by Assistant Federal Defender Angela Hansen. Assistant United States Attorney Aaron Wegner appeared for the government. Pretrial Services Officer Denise Mancia was also present at the hearing. Defendant was assisted by a Spanish interpreter.

After considering the parties' proffers, the bail study, and statements from Defendant and his family members at the hearing, the Court orders that Defendant be released into the custody of his wife and son, Maria Estela Leal and Edgar Limon Lopez, on a $250,000 unsecured bond cosigned by the following sureties: Edgar Limon Lopez; Maria Estela Leal; Gustavo Limon Lopez, Defendant's brother; and Raquel Limon, Defendant's sister.

## II.   ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release.  If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or community danger.  Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases..."  *U.S. v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (quoting *U.S. v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions ... [can] reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(c).  In non-capital cases, pretrial release "should rarely be denied."  *Motamedi,* 767 F.2d 1403 at 1405; *see also U. S. v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").

The court must order a defendant detained if the court finds that conditions cannot be fashioned to assure the defendant's appearance in court, or the safety of the community or another person.  18 U.S.C. § 3142(e)(1).  The government bears the burden of proof on both prongs.  The government must show by a preponderance of the evidence that the defendant is a flight risk, and must prove by clear and convincing evidence that defendant poses a non-mitigable danger to the community.  *United States v. Aitken,* 898 F.2d 104, 107 (9th Cir. 1990); *Motamedi*, 767 F.2d at 1406-1407.

Bail hearings generally proceed by proffer, and the rules of evidence do not apply.  18 U.S.C. § 3142(f).  At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person.  *Id.*  The Bail Reform Act  "mandates release of a person facing trial under the least

restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d 1403, 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

The Ninth Circuit has held that the weight of the evidence is the least important of the factors. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408. "The[] factor[] may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*

### A. Rebuttable Presumption of Detention

Defendant is charged with a violation of 18 U.S.C. §841(a)(1) (possession with intent to distribute methamphetamine). This charge gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. §3142(e)(3)(A). This rebuttable presumption, however, merely shifts the burden of *production* to the defendant; the ultimate burden of *persuasion* remains with the government. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

Here, the defense proffered evidence that Defendant is not a danger to the community or a flight risk, including his lack of a criminal history or failures to appear, his lack of a history of violence, alcohol or drug use, or mental illness, his history of self-employment, his stable residential and family history, and his long-standing ties to the Central District of California.

The defense also produced several viable sureties, as listed above. Despite being informed of the seriousness of the charges against Defendant, these family members indicated that they are willing to stake their financial futures on his complying with the conditions of release.

The government bears the burden of persuasion showing by a preponderance of the evidence that the accused is a non-mitigable flight risk, and by clear and convincing evidence that defendant poses a non-mitigable danger to the community. The government's only argument in support of detention is that Defendant poses a risk of flight. As discussed more fully below, the Court finds that Defendant has rebutted the presumption of detention, and the government has not met its burden of proof.

### B. The Nature and Circumstances of the Offense and the Weight of the Evidence

The affidavit supporting the underlying criminal complaint alleges that on October 5, 2012, Defendant was pulled over for a traffic violation by a police officer in Antioch. Dkt #1 at 4. Defendant was "trembling, sweating, and was on the verge of tears" when he was pulled over. *Id.* at 5. The officer asked Defendant if he had anything illegal in the truck, such as guns or drugs. *Id.* Defendant responded that he had drugs in the truck. *Id.* The officer then searched the truck and found 21 plastic containers containing what he believed to be methamphetamine, as well as a large plastic bag holding 19 PVC pipes containing what the officer believed to be methamphetamine. *Id.* A field test of the substance in the PVC pipes tested positive for methamphetamine. *Id.* at 5-6.

The government argues that the nature and circumstances of the charged offenses weighs in favor of finding that Defendant poses an unmitigable a risk of flight. Because Defendant is accused of possessing a large quantity of methamphetamine and is consequently facing a significant prison sentence, the government argues that he has a great incentive to flee. Defense counsel argued that Defendant may be safety-valve eligible, and therefore may be sentenced to less than the statutory mininum for the offense. *See* 18 U.S.C. § 3553(f). In addition, defense counsel argued that the description of Defendant as trembling and on the verge of tears showed that he is a first-time offender who is likely to comply with the conditions of his release, rather than a seasoned drug trafficker who is likely to defy the Court system. In addition, Defendant's honesty in admitting that there were drugs in the truck shows that he is likely to cooperate with the conditions of his release.

Although the charges against Defendant are indeed serious, the Court finds that any risk of flight based on the severity of Defendant's potential sentence can be mitigated by the conditions of release, including that Defendant be subject to electronic monitoring, not travel outside of the Northern and Central Districts of California, and surrender his travel documents.

The weight of the evidence against Defendant appears to be substantial, as Defendant admitted to the police officer that there were drugs in his truck. However, Defendant argues that he hopes to win a suppression motion based on the circumstances of the traffic stop. Regardless, the weight of the evidence is the least important factor in the pretrial release decision. *See Motamedi*, 767 F.2d at 1408.

### C. The History and Characteristics of Defendant and the Nature and Seriousness of the Danger to Any Person or the Community

Defendant is 48 years old. He is a legal resident of the United States and has lived in California since 1991. Defendant has lived in Hemet, California, since 1992. Before that, he lived in San Jacinto, California, for one year.

Defendant has been with his wife for 27 years, and they have three adult children together, two of whom reside with them in their house in Hemet, California. All three of their children are United States citizens born in the Central District. Defendant, his wife, and two of their children have lived at their current address for three years. The third child resides nearby in Perris, California. Defendant's wife is also a legal resident of the United States. Defendant has two siblings that live in Hemet and Compton, California. Both of these siblings are United States citizens.

Defendant was born in Mexico and is a Mexican citizen. His father and nine other siblings live in Mexico. He maintains regular contact with them. Defendant stated that he may have an expired Mexican passport in Mexico, but is unsure of its exact location.

Defendant completed high school in Mexico. He states that he has been self-employed for the last ten years, and that he buys cars in the United States, fixes them in his garage, nationalizes them at the border, and sells them in Mexico. Defendant makes approximately $16,000 a year in this business. Defendant's son, Edgar Limon Lopez, corroborated Defendant's account of the car

business. Edgar works in the business with Defendant repairing vehicles that Defendant intends to sell. Edgar also repairs vehicles for his own customers. Defendant's sister, Raquel Limon, also corroborated Defendant's account of the car business, stating that she used to give Defendant money to buy vehicles that he intended to sell. Previously, Defendant worked as an electrician for 14 years for National RV in Perris, California.

Defendant has no significant criminal history, although he was convicted of misdemeanor vandalism in 2008. Defendant has no warrants or detainers, and is not on parole or probation. He has never failed to appear for a court proceeding.

Defendant has no significant history of mental illness, although he states that he suffers from occasional anxiety and has received medication for it in the past. He is in good physical health. He does not drink alcohol or use illicit drugs.

Defendant's wife, Maria Estela Leal, brother, Gustavo Limon, sister, Raquel Limon, and adult son, Edgar Limon Lopez, appeared at the detention hearing, and were all willing to serve as sureties. All of the sureties were made aware of the serious charges against Defendant. The Court directly addressed each of them to determine their suitability as sureties. The Court emphasized the risks of co-signing the bond, and the serious nature of the sureties' voluntary agreements to stake their financial future on Defendant's compliance with the release order. The Court explained to them that their wages could be garnished if Defendant violates a condition of his release and the government obtains a judgment against them for the full amount of the bond. The Court instructed the sureties that they were executing a legally enforceable agreement and obligating themselves to pay the entire amount of money to the government if Defendant is non-compliant.

Each of the sureties confirmed their identities and employment, and stated that they were willing to sign Defendant's release bond. After the Court explained to them that if Defendant was released, he would be unable to work in his car business, each of the family members stated that they were willing to help Defendant financially, even if they had to take second jobs. Defendant's son, Edgar Limon Lopez, agreed to contribute more financial support to his parent's household. It was evident that Defendant's family members have close and loving relationships with Defendant.

The Court finds that Defendant's family members have a great deal of moral suasion with him, and that he is not likely to jeopardize their financial futures by failing to comply with the terms of his release.

None of the sureties have property to post to secure the bond.  Although Raquel Limon originally told Pretrial Services that she was willing to post her house in Compton, she explained at the hearing that she co-owned the property with her ex-husband, who would not be willing to post the property.

Defendant's wife and son, Maria Estela Leal and Edgar Limon Lopez, stated that they were willing to serve as custodians to Defendant.  The Court explained to them the serious nature of this obligation and they indicated that they understood and voluntarily took on the responsibility of being a custodian.

Defendant has close ties to the Central District, including his longstanding and close relationships with his wife, three adult children, and two siblings.  Defendant has lived in the Central District for more than twenty years.  He and his wife are legal residents of the United States, and the rest of his family members living in the United States are United States citizens.  Defendant has no criminal history, has no failures to appear, and no history of drug use or mental illness.  All of these facts weigh against finding that he poses an unmitigable risk of flight.

Defendant's ties to Mexico, including his family living in Mexico, his regular trips to Mexico, and his Mexican citizenship, create a risk of flight.  But in light of Defendant's ties to the Central District and strong support from his American family, any risk that Defendant will flee to Mexico is mitigated by the conditions of release, which require him to, among other things, surrender all travel documents to Pretrial Services and be subject to electronic monitoring.

The government also argued that Defendant's business of fixing and selling cars was a "ruse" for transporting drugs across the border.  But the government proffered no evidence to support this argument, and Defendant's son and sister corroborated Defendant's account of the business.

///

## III.  CONCLUSION

Pretrial release should be denied only in rare circumstances, and any doubt about the propriety of release should be resolved in the defendant's favor.  *Motamedi*, 767 F.2d at 1405. The Court's inquiry with respect to the question of pretrial release is whether, considering the factors in section 3142(g), any conditions or combination of conditions in section 3142(c) will reasonably assure Defendant's appearance and the safety of the community.

The Court finds that that the government has not shown by a preponderance of the evidence that no condition can reasonably assure Defendant's appearance.  The government did not argue that Defendant poses a danger to the community.  The conditions of release set forth on the bond are sufficient to reasonably assure Defendant's appearance and the safety of the community.

Accordingly, Defendant shall be released on the conditions set forth in the bond, which is filed separately.

**IT IS SO ORDERED.**

Dated:  October 16, 2012

KANDIS A. WESTMORE  
United States Magistrate Judge